# Exhibit D

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
*Administrative Appeals Office*
Washington, D.C. 20529



U.S. Citizenship
and Immigration
Services

TEXAN DOGS LLC
C/O WONG FLEMING, P.C.
77 SUGAR CREEK CENTER BLVD STE 401
SUGAR LAND TX  77478

DATE: NOV. 24, 2020         FILE #:  WAC 20 112 51543
                            I-290B RECEIPT #:  WAC 20 901 48867

IN RE:    Petitioner:    TEXAN DOGS LLC
          Beneficiary:   FAIZ RAVISH MAKANI

ON BEHALF OF PETITIONER:

REHAN S. ALIMOHAMMAD, ESQUIRE
WONG FLEMING, P.C.
77 SUGAR CREEK CENTER BLVD STE 401
SUGAR LAND TX  77478

Enclosed is the non-precedent decision of the Administrative Appeals Office (AAO) for your case. If you believe we incorrectly decided your case, you may file a motion requesting us to reconsider our decision, reopen the proceeding, or both. The requirements for motions are located at 8 C.F.R. § 103.5. Motions must be filed on a Form I-290B, Notice of Appeal or Motion, **within 33 days of the date of this decision**. This time period includes three days added for service by mail.

The Form I-290B website (www.uscis.gov/i-290b) contains the latest information on fee, filing location, and other requirements. **Please do not mail any motions directly to the AAO.**

Sincerely,

*[signature]*

Susan Dibbins
Chief, Administrative Appeals Office (Acting)

REV 10/2020                                                     www.uscis.gov



U.S. Citizenship
and Immigration
Services

**Non-Precedent Decision of the
Administrative Appeals Office**

In Re: 13477957

Date: NOV. 24, 2020

Appeal of California Service Center Decision

Form I-129, Petition for L-1A Manager or Executive

The Petitioner, a hot dog franchise, seeks to temporarily employ the Beneficiary as "Chief Executive Officer" of its new office[1] under the L-1A nonimmigrant classification for intracompany transferees. *See* Immigration and Nationality Act (the Act) Section 101(a)(15)(L), 8 U.S.C. § 1101(a)(15)(L). The L-1A classification allows a corporation or other legal entity (including its affiliate or subsidiary) to transfer a qualifying foreign employee to the United States to work temporarily in a managerial or executive capacity.

The Director of the California Service Center denied the petition, concluding that the Petitioner did not establish, as required, that the new office would support the Beneficiary in a managerial or executive position within one year of the petition's approval. The matter is now before us on appeal.

In these proceedings, it is the Petitioner's burden to establish eligibility for the requested benefit. *See* Section 291 of the Act, 8 U.S.C. § 1361. As we do not believe supplemental argument would aid us in this decision, we deny the Petitioner's request for oral argument. *See* 8 C.F.R. § 103.3(b). Upon *de novo* review, we will dismiss the appeal because the Petitioner did not meet that burden.

## I. LEGAL FRAMEWORK

To establish eligibility for the L-1A nonimmigrant visa classification in a petition involving a new office, a qualifying organization must have employed the beneficiary in a managerial or executive capacity for one continuous year within three years preceding the beneficiary's application for admission into the United States. 8 C.F.R. § 214.2(l)(3)(v)(B). In addition, the beneficiary must seek to enter the United States temporarily to continue rendering his or her services to the same employer or a subsidiary or affiliate thereof in a managerial or executive capacity. *Id.*

Further, in the case of a new office petition, the petitioner must submit evidence to demonstrate that the new office will be able to support a managerial or executive position within one year. This evidence must establish that the petitioner secured sufficient physical premises to house its operation

---

[1] The term "new office" refers to an organization which has been doing business in the United States for less than one year. 8 C.F.R. § 214.2(l)(1)(ii)(F). The regulation at 8 C.F.R. § 214.2(l)(3)(v)(C) allows a "new office" operation no more than one year within the date of approval of the petition to support an executive or managerial position.

and disclose the proposed nature and scope of the entity, its organizational structure, its financial goals, and the size of the U.S. investment. *See generally* 8 C.F.R. § 214.2(l)(3)(v).

## II. U.S. EMPLOYMENT IN AN EXECUTIVE CAPACITY

The Petitioner claims that it will employ the Beneficiary in an executive capacity. The primary issue to be addressed in this discussion is whether the Petitioner provided sufficient evidence to establish that its operation would support the Beneficiary in an executive capacity within one year of the petition's approval.[2]

"Executive capacity" means an assignment within an organization in which the employee primarily directs the management of the organization or a major component or function of the organization; establishes the goals and policies of the organization, component, or function; exercises wide latitude in discretionary decision-making; and receives only general supervision or direction from higher-level executives, the board of directors, or stockholders of the organization. Section 101(a)(44)(B) of the Act.

A. Duties

The Petitioner explained that the U.S. organization was formed to develop hot dog franchises in Houston, Texas, and surrounding areas. According to the Petitioner, it has entered into a lease agreement for its first location, which it identifies as a "build-to-suit" agreement which permits the Petitioner to modify the premises to house its first restaurant location. In a supporting cover letter, the Petitioner identified the Beneficiary's proposed duties as follows:

- Provide timely reports to [the foreign entity's] and [the Petitioner's] stockholders of business operations and profitability in the United States to keep all apprised (20%)
- Oversee efficient operation of the restaurant and set financial goals in consultation with CFO (10%)
- Determine, along with CFO and Construction manager, the future locations of new restaurants (10%)
- Oversee all financial measurements and set goals (ex: deb/equity ratio, etc.) of [Petitioner] (10%)
- Oversee all departments from development to shift leaders (20%)
- Oversee personnel decisions (hiring, firing, coaching, etc.) and recruitment of new staff/crew members and managers/developers (10%)
- Oversee day-to-day operations of the restaurant and setting policies along with community outreach and public relations (20%)

The Petitioner's initial description did not specify the job duties the Beneficiary would perform during its initial stage of operation to ensure the company's progression beyond that phase and on to the next

---

[2] Although the Director also considered whether the Beneficiary would be employed in a managerial capacity as defined at section 101(a)(44)(A) of the Act, the Petitioner has not claimed that the Beneficiary's position is managerial in nature.

2

stage of development, during which it would support the Beneficiary in an executive position entailing primarily executive-level job duties within one year of the petition's approval. Although the Petitioner provided an organizational chart and business plan that included a projection of its staffing and operations for the first year, it did not specify how its projected staff would alleviate the Beneficiary from performing non-qualifying duties on a day-to-day basis.

In a request for evidence ( RFE), the Director asked the Petitioner to clarify the Beneficiary's proposed job duties and provide evidence demonstrating that the Beneficiary would not primarily perform operational, non-executive job duties. In response, the Petitioner submitted the same list of duties along with explanations regarding how each of the stated duties was primarily executive in nature. For example, it stated that the first three duties, which include providing reports to stockholders, oversight of the restaurant and its financial goals, and determining locations for future restaurants, "show he has a wide latitude over decision making, with little or no direction from the foreign entity." The Petitioner indicated that the organizational chart further supported this assertion. Regarding the last three duties, which include oversight of all departments and personnel decisions, as well as oversight of the restaurant's daily operations, the Petitioner stated that these tasks demonstrate that "he is clearly in charge of directing the organization." Finally, the Petitioner stated that the oversight of financial measures and goals, and oversight of the day-to-day operations of the restaurant, show that "he will establish that goals and policies of the organization."

The Petitioner also provided the following daily breakdown of the Beneficiary's duties:

| Time | Duty |
|---|---|
| 9:00 a.m. to 10:30 a.m. | Meet with COO regarding construction issues, personnel issues, and health issues |
| 10:30 a.m. to 12:00 p.m. | Meet with CFO regarding financial issues and other locations |
| 12:00 p.m. – 1:00 p.m. | Break |
| 1:00 p.m. – 2:00 p.m. | Meet with vendors to negotiate costs |
| 2:00 p.m. – 4:00 p.m. | Meet with potential corporate customers and community partners to offer services and additional products |
| 4:00 p.m. – 5:00 p.m. | Resolve any issues arising during the day with COO and CFO |

The Director concluded that the evidence did not establish that the new company would grow to a sufficient size to support a managerial or executive position within one year. The Director observed that the general description of duties provided by the Petitioner provided no insight into the nature of the Beneficiary's executive tasks, and concluded that the Petitioner had not established that the Beneficiary would be relieved from performing non-qualifying duties.

On appeal, the Petitioner asserts that the documentation submitted initially and in response to the RFE is sufficient to establish that the Beneficiary will be employed in a capacity that is primarily executive.

3

The Petitioner asserts that its business plan was comprehensive and outlined the manner in which the Beneficiary would be relieved from performing non-qualifying duties. It further stated that its organizational chart, which demonstrated the Beneficiary's oversight of a CFO, a COO, and a general manager, further supported its assertion that the Beneficiary would be employed in an executive capacity. The Petitioner maintains that it has met its burden to demonstrate that it will be able to support an executive position within one year, and states that it "is relying on the record in front of the AAO." No new evidence was submitted on appeal.

Upon review of the petition and the evidence, and for the reasons discussed herein, the Petitioner has not established that the Beneficiary will be employed by the United States entity in an executive capacity within one year.

When examining the executive or managerial capacity of a beneficiary, we look first to the petitioner's description of the job duties. *See* 8 C.F.R. § 214.2(l)(3)(ii). The petitioner's description of the job duties must clearly describe the duties to be performed by the beneficiary and indicate whether such duties are either in an executive or managerial capacity. *Id.* Beyond the required description of the job duties, we review the totality of the record when examining the claimed managerial or executive capacity of a beneficiary, including the petitioner's proposed organizational structure, the duties of the beneficiary's proposed subordinate employees, the petitioner's timeline for hiring additional staff, the presence of other employees to relieve the beneficiary from performing operational duties at the end of the first year of operations, the nature of the petitioner's business, and any other factors that will contribute to a complete understanding of a beneficiary's actual duties and role in a business. The petitioner's evidence should demonstrate a realistic expectation that the enterprise will succeed and rapidly expand as it moves away from the developmental stage to full operations, where there would be an actual need for a manager or executive who will primarily perform qualifying duties. *See generally* 8 C.F.R. § 214.2(l)(3)(v).

In the instant matter, the Petitioner has repeatedly described the Beneficiary's proposed position in very broad terms, noting his oversight of all aspects of the operation. Similarly, although the Petitioner provided a breakdown of how the Beneficiary's time would be allocated among his various responsibilities, this description was even more vague, indicating that the Beneficiary would devote his time to "oversee[ing] day-to-day operations," "set[ting] financial goals," and "setting policies." We cannot accept an ambiguous position description and speculate as to the related managerial or executive duties to be performed. Specifics are clearly an important indication of whether a beneficiary's duties are primarily executive or managerial in nature, otherwise meeting the definitions would simply be a matter of reiterating the regulations. *Fedin Bros. Co., Ltd. v. Sava*, 724 F. Supp. 1103, 1108 (E.D.N.Y. 1989), *aff'd*, 905 F.2d 41 (2d. Cir. 1990). Although the Petitioner supplemented the list of duties with explanations regarding the manner in which the duties were primarily executive in response to the RFE, the Petitioner quotes verbatim from the definition of executive capacity. Merely repeating the language of the statute or regulations does not satisfy the petitioner's burden of proof. *Id.*

Thus, while several of the duties described by the Petitioner would generally fall under the definition of executive capacity, the lack of specificity raises questions as to the Beneficiary's actual proposed responsibilities. Overall, the position description alone is insufficient to establish that the Beneficiary's duties would be primarily in an executive capacity, particularly in the case of a new

4

office petition where much is dependent on factors such as the Petitioner's business and hiring plans and evidence that the business will grow sufficiently to support the Beneficiary in the intended executive capacity. The Petitioner has the burden to establish that the U.S. company would realistically develop to the point where it would require the Beneficiary to perform duties that are primarily executive in nature within one year. Accordingly, the totality of the record must be considered in analyzing whether the proposed duties are plausible considering the Petitioner's anticipated staffing levels and stage of development within a one-year period.

According to the business plan and organizational chart, the Beneficiary will oversee a CFO, a COO, and a general manager, who will ultimately supervise a subordinate staff of four shift leaders and 16 individuals identified as "staff members." Although the Petitioner contends that the general manager will "manage the day-to-day operations" of the business, it has not provided a detailed account of the actual daily tasks the Beneficiary will perform within the context of a hot dog restaurant. Rather, the Petitioner broadly focuses on the Beneficiary's discretionary authority, stating that he will negotiate costs with vendors on a daily basis and oversee personnel decisions and recruitment. However, the Petitioner says little about the actual tasks the Beneficiary would perform during the various stages of its development and makes no distinction between tasks that the Beneficiary would need to perform during its rudimentary phase and those he intends to perform once the company is no longer in the "new office" stage of development. Again, specifics are clearly an important indication of whether a beneficiary's duties are primarily executive or managerial in nature, otherwise meeting the definitions would simply be a matter of reiterating the regulations. *Fedin Bros. Co., Ltd. v. Sava*, 724 F. Supp. at 1108. Although it is reasonable to conclude that the Beneficiary's duties would change to correspond with the Petitioner's operational development and changing needs, the Petitioner did not provide a job description that reflects this likely progression. Without a detailed iteration of the Beneficiary's job duties during the Petitioner's first year of operation, it is unclear how the Petitioner would progress beyond the "new office" phase.

We acknowledge that the Beneficiary would assume a position as the Petitioner's senior employee and that as a result, he would have authority to establish plans, policies, and objectives for the company and make major decisions regarding its finances and overall direction. However, the Petitioner has not established that these types of responsibilities would primarily occupy the Beneficiary's time within one year. By statute, eligibility for this classification requires that the duties of a position be "primarily" executive or managerial in nature. Sections 101(A)(44)(A) and (B) of the Act. Therefore, even though the Beneficiary may exercise discretion over the Petitioner's day-to-day operations, a broad overview of his responsibilities is insufficient to establish that his actual duties during the Petitioner's first year of operation would lead to primarily managerial or executive duties within one year of this petition's approval.

In light of the ambiguities described above, we are unable to ascertain what job duties the Beneficiary would perform to develop the Petitioner beyond the "new office" phase of operation or the job duties he would perform beyond that initial phase.

B. Projected Staffing and Business Plan

If staffing levels are used as a factor in determining whether an individual will be acting in a managerial or executive capacity, U.S. Citizenship and Immigration Services (USCIS) takes into

account the reasonable needs of the organization, in light of the overall purpose and stage of development of the organization. *See* section 101(a)(44)(C) of the Act.

At the time of filing, the Petitioner projected that its organization would eventually be comprised of 24 employees, including the Beneficiary, with its first location employing 12-15 full-time workers by the end of the first year of operations. The organizational chart that was included in the original business plan depicts the Beneficiary at the top of the hierarchy, followed by the CFO and COO as the Beneficiary's subordinates. The general manager is under the direct supervision of the COO, with four shift managers and 16 "staff members" at the bottom tier of the organization. The Petitioner did not clarify how its staffing structure, within the context of a hot dog restaurant, would elevate the Beneficiary to an executive position.

In the RFE response, the Petitioner reiterated its plan to operate as a hot dog franchise, and further stated its intent to expand its business to multiple locations after the first store "settles down," which it projected would be six to eight months after the store's grand opening.[3] The Petitioner did not, however, offer more detailed information clarifying when and how it planned to take steps towards the expansion or establish that its staffing plan would be sufficient to meet the business needs of a hot dog franchise. Further, despite pointing to the Beneficiary's discretionary authority and his position at the top of the hierarchy as supporting factors, we note that an individual will not be deemed an executive under the statute simply because they have an executive title or because they "direct" the enterprise as the owner or sole managerial employee. Section 101(a)(44)(B) of the Act. The Petitioner must support its assertions with relevant, probative, and credible evidence. *See Chawathe*, 25 I&N Dec. at 376. Although the Petitioner stated that the general manager would oversee the restaurant's daily operations, and the CFO would oversee the organization's financial goals, these claims, without further supporting evidence, are not sufficient to establish that within one year of this petition's approval the Petitioner would be adequately staffed and would have the capacity to relieve the Beneficiary from having to primarily perform non-executive tasks as a routine part of his daily activity.

Further, the Petitioner's business plan does not show how it will support the Beneficiary in an executive position within one year of the petition's approval. The Petitioner's initial evidence included a six-page business plan, which indicates that the company intends to initially open one hot dog restaurant and ultimately expand its enterprise to multiple locations. The business plan states that the company's start-up costs are $104,000, which will be delegated to its initial inventory purchase, its first rent payment and security deposit, due diligence budget, working capital, and securing an equipment loan. However, the record reflects only $40,000 has been invested into the U.S. entity by the foreign entity to date.[4] Moreover, while the Petitioner indicates that it intends to expand its franchise to multiple locations in the next few years, the business plan accounts only for the start-up costs of the initial restaurant location and provides no other cost projections or plans beyond the first year of operations for this initial location. The Petitioner further indicates that it anticipates net sales of $577,200 in its first year of operations. However, the Petitioner indicates that although it has

---

[3] As will be discussed, the Petitioner's business plan did not provide timelines for the initial restaurant's grand opening or any projected timelines for the opening of future locations.

[4] The record contains a copy of the Petitioner's bank statement ending on January 31, 2020 demonstrating a balance of $40,000. In response to the RFE, the Petitioner submitted a letter from its bank confirming a subsequent $31,000 deposit to the Petitioner's account on February 6, 2020. However, the letter is not accompanied by an updated bank statement, deposit tickets, canceled checks, or other documentation to confirm this deposit or identify the source of the funds.

6

secured a lease for its premises, the premises must be constructed to house a restaurant, which will be a primary focus of the Beneficiary and the COO, who will simultaneously serve as the Petitioner's "construction manager," during this first year of operations. No start-up costs have been allocated toward construction costs, and no timeline has been provided to demonstrate when construction will end and the actual restaurant operations will begin.

Moreover, the Petitioner did not provide a specific hiring timeline for its proposed staff. Although it claims to currently employ four individuals (the Beneficiary, the CFO, the COO, and the general manager), the organizational chart identified four "shift managers" and 16 "staff member" positions to be filled. In the business plan, the Petitioner vaguely states that "the first location will have between 12-15 full-time employees." No further details regarding when these individuals would be hired and what positions they would fill was outlined or articulated. Moreover, the duties of the sixteen "staff members" were not specifically defined, although the Petitioner implied that these positions would likely include cooks and customer service staff. As noted above, the Petitioner's anticipated start-up costs do not include projections for employee salaries and wages, and no funds have been allocated toward the payment of salaries and wages.

In this matter, a review of the business plan provides very little information regarding the timeline for hiring employees and commencing operations, the financial position of the U.S. company, and the Petitioner's financial objectives for the first year of operations. The Petitioner's submission of a vague job description for the Beneficiary, a bank statement showing $40,000 in an account, and a six-page business plan, falls significantly short of meeting its burden to establish that the company will be able to support a primarily executive position within a twelve-month period. The regulations require the Petitioner to present a credible picture of where the company will stand in exactly one year, and to provide sufficient evidence in support of its claim that the company will grow to a point where it can support an executive position within one year.

Overall, the vague job description provided for the Beneficiary, considered in light of the Petitioner's business and hiring plans for the first year of operations, prohibits a determination that the Petitioner could realistically support a managerial or executive position within one year. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal will be dismissed.

7